UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | | |
|---|---|---|
| ARVA COLLINS, | ) | |
| | ) | Case No.: |
| Plaintiff, | ) | |
| | ) | Hon: |
| v. | ) | |
| | ) | |
| TONY SMILES, and | ) | Demand for Jury Trial |
| | ) | |
| KENYA BISHOP | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff Arva Collins ("Ms. Collins"), by and through her attorneys at

Lakeshore Legal Aid, complains against Defendants Tony Smiles and Kenya

Bishop (collectively "Defendants"). Ms. Collins alleges claims arising out of her

tenancy at Defendants' residential rental property, including claims arising from

Defendants' failure to comply with federal, state and local laws designed to protect

tenants from lead hazards in rental housing, which resulted in the lead poisoning of

Ms. Collins's two-year-old granddaughter.

## I. INTRODUCTION

1.    Since March 2023, Ms. Collins and her children and grandchild have

lived at 3261 Collingwood, Detroit, 48206 ("Property"). Defendants have

callously refused to comply with the law regarding lead-based paint hazards in

rental housing. This includes failing to inspect for and alleviate lead hazards before offering the Property for rent as required by Detroit City Code and failing to provide lead-based paint disclosures and information about the dangers associated with lead-based paint poisoning at the time of the lease agreement as required by federal law.

2.     Due to Defendants' refusal to control lead hazards and disclose/warn/notify Ms. Collins's of the toxic lead at the Property, Ms. Collins' two-year-old granddaughter, who lives with her at the rental property, was seriously and permanently injured when she was exposed to dangerously high levels of lead dust and paint chips at the premises. The federal and local Detroit lead-based paint laws are designed to prevent exactly this harm - that is, the lead poisoning of young children. The Residential Lead-Based Paint Hazard Reduction Act ("Lead Hazard Act") was enacted to, among other things, "develop a national strategy to build the infrastructure necessary to eliminate lead-based paint hazards in all housing as expeditiously as possible" and to "educate the public concerning the hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards." *Roberts v. Hamer*, 655 F.3d 578, 581 (6th Cir. 2011). Further, Detroit's 2019 Joint Declaration of a Public Nuisance by the Mayor and the Chief Public Health Officer states the following:

> The City of Detroit has a crisis – thousands of children living in
> the City suffer elevated blood lead levels as a result of living in

2

properties with lead hazards. Federal, state and local laws require property owners to take precautions to protect against childhood lead exposure. Many landlords do not comply with these laws, and the failure to abate lead hazards has created this crisis. Elevated blood lead levels in children cause developmental issues and are associated with other life-long complications. Each case is a tragedy for the child, his or her family, and the City, State and Federal authorities that must provide services for these individuals.

Defendants' unconscionable business practice of flouting legal requirements in order to maximize profits has exposed Ms. Collins and her family to toxic lead. Ms. Collins brings this action against Defendants seeking an injunction for lead hazard abatement, actual and statutory damages, interest, penalties, costs, attorneys' fees, and other relief.

## II.  PARTIES

3.      At all times relevant to this lawsuit, Plaintiff Arva Collins was a resident and citizen of Detroit, Wayne Country, Michigan within the geographical boundaries of the Eastern District of Michigan.

4.      Defendant Tony Smiles is an individual who owns and controls the Property at 3261 Collingwood, Detroit, 48206 and rents the Property as a landlord. At all times relevant to this action he resided in the Eastern District of Michigan and conducted business therein.

5.      Defendant Kenya Bishop is an individual who manages the Property at 3261 Collingwood, Detroit, 48206 as a landlord and is the primary point of contact for the leasing, maintenance, and management of the Property as a rental

3

unit. At all times relevant to this action she resided in the Eastern District of Michigan and conducted business therein.

### III. JURISDICTION AND VENUE

6.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1331 for claims brought under 42 U.S.C. 4852 and 15 U.S.C. 2601 *et seq*. It is noted that this Court has sole jurisdiction over claims under the Toxic Substances Control Act, 15 U.S.C.S. 2601 *et seq*. This Court has supplemental jurisdiction over the state law claims under 28 U.S.C. §1367, as all claims arise out of a common nucleus of operative fact.

7.     Venue is proper in this jurisdiction because the subject premises, 3261 Collingwood, Detroit, 48206, is located in this jurisdiction and the Defendants own/maintain/control the subject premises and all actions/omissions/failures to act attributable to Defendants occurred within this jurisdiction, and the Plaintiff resides and was injured in this jurisdiction.

8.     This Court has personal jurisdiction over Defendants because Defendants are residents of the state of Michigan, and the acts and omissions alleged in this complaint occurred in the State of Michigan.

### IV.  FACTUAL ALLEGATIONS

9.     Ms. Arva Collins is a mother and grandmother. She has been the primary caregiver for her two-year-old granddaughter S.S. since S.S.'s parents passed away in 2021.

10.     In or around February 2023, Ms. Collins learned that Defendant Smiles had a rental unit available at 3261 Collingwood, Detroit, 48206 ("Property"). Defendant Smiles indicated the Property would be ready for occupancy in March, 2023.

11.     In March, 2023, Defendant Smiles stated that the Property was now available and in excellent condition for Ms. Collins and her young children.

12.     Ms. Collins entered into a lease agreement ("Lease") with Mr. Smiles and Ms. Kenya Bishop on March 11, 2023.The Lease lists Ms. Collins as Tenant, S.S. as an "occupant," and both Kenya Bishop and Tony Smiles as Landlord. The rental rate for the Property was listed as $1100 per month. (**Exhibit 1, Lease**)

13.     The Lease included a blank lead disclosure page that was not completed by Defendants and not signed by either Defendants or Ms. Collins. The disclosure page states that "lessors must disclose the presence of known lead-based paint and/or lead-based paint hazards in the dwelling. Lessees must also receive a federally approved pamphlet on lead poisoning prevention." All portions of the lead disclosure page were left blank, including all areas where Defendants were

required to acknowledge their compliance with federal disclosure requirements. (**Exhibit 1, pg 4**)

14.    Defendants did not provide the required federally approved pamphlet to Ms. Collins at the lease signing or any other time. Defendants did not provide Ms. Collins with any reports or records pertaining to lead-based paint at the Property.

15.    Defendants demanded that Ms. Collins pay $4,500 up front to rent the Property. This included first month's rent and $500 toward Ms. Collins purchase of the kitchen appliances. Defendant Smiles stated that his practice was to charge additional fees up front due to the lengthy eviction process.

16.    Ms. Collins, who was desperate for housing for herself and her family, paid the move-in fees and moved in on or around March 11, 2023.

17.    Significant maintenance and repair issues arose during Ms. Collins' tenancy that were unaddressed by Defendants, including standing water in the basement, leaking plumbing, malfunctioning air conditioning unit, lack of carbon monoxide detectors, and flaking paint. Defendants failed to respond to all but one of Ms. Collins requests for repairs (a broken toilet). Despite their failure to respond to repair requests, Defendants collected rent from Ms. Collins in the amount of $1100 each month through July of 2023.

18.　　On or around August 3, 2023, Ms. Collins received a notice from the City of Detroit Health Department stating that S.S.'s blood lead level was 10.8 micrograms per deciliter, commonly known as lead poisoning (**Exhibit 2, EBL Notice**). The Centers for Disease Control and Prevention ("CDC") uses a blood lead level of 3.5 micrograms per deciliter of blood to identify children who require case management. The CDC further states that "The most important step…is to prevent lead exposure before it occurs." *Id*.

https://www.cdc.gov/nceh/lead/data/blood-lead-reference-value.htm.

19.　　Children's exposure to lead causes severe and permanent injuries, including, but not limited to neurological brain damage, hyperactivity, attention deficits, delayed development, learning disabilities, and deficits in a wide range of neuropsychological functioning, including visual motor skills, fine motor skills, verbal skills, attention and concentration, memory, comprehension and impulse control, etc. It can also cause coma, seizure, death and other traumatic injuries/events. See e.g. https://www.cdc.gov/nceh/lead/prevention/health-effects.htm.

20.　　In August, 2023 the Detroit Health Department Lead Program requested an Elevated Blood Lead Level inspection of the Property. The City inspector examined the Property on August 15, 2023 and issued a Correction Order to Defendant Smiles, ordering him to come into compliance with Detroit Property

Maintenance laws, including obtaining a lead clearance at the Property, by September 15, 2023. (**Exhibit 3, Correction Order**). Because Defendant Smiles did not come into compliance by September 15, the City issued blight tickets, including for violation of City Code 8-15-82(g) – "Unlawful rental of property of without lead clearance." Mr. Smiles was found responsible on September 29, 2023, and issued $1,435 in fines. (**Exhibit 4, Blight Tickets**).

21.     In fact, this was not the first occasion that Defendant Smiles was found responsible for illegally renting to Detroit tenants without complying with City of Detroit health and safety laws. On March 6, 2023, just five days prior to executing a lease with Ms. Collins, Defendant Smiles was determined Responsible by Default by Detroit's Department of Administrative Hearings for "Unlawful rental of property without lead clearance." The matter is currently in legal collections.

22.     On August 21, 2023, licensed lead inspector Alan Hill (Michigan Certification P-07070) performed an environmental investigation at the Property and found numerous severe lead hazards. The investigation report indicated that "[v]isible paint chips were detected," and "[e]levated dust levels were detected on floors, window sills, window well-troughs and porches of the home. Please note: the levels in the troughs were extremely high." The report further indicated that "[i]ngestion of lead dust through hand to mouth activities such as eating and

putting [S.S.'s] hands in her mouth is what the investigator believes to be a possible cause of her elevated blood lead levels. The other source would be [S.S.] picking at the painted surfaces in the home that are peeling . . . ." **(Exhibit 5, EBL Environmental Report pg. 26).**

23.     The lead contamination discovered by the inspector existed on the Property prior to and during the period when Ms. Collins resided at the Property with her family.

24.     Defendants knew or should have known of the dangerous lead contamination at the Property prior to and during the lease of the Property to Ms. Collins and her family, including young children.

25.     Ms. Collins notified Defendants of the lead poisoning through an August 21, 2023 letter and requested immediate lead abatement to prevent further lead exposure for her and her family. She also notified Defendants that she would be withholding her rental payments until Defendants performed the required steps and achieved compliance.

26.     To date, Defendants have failed to take any steps whatsoever to investigate the lead issues at the Property, remove the lead hazards, or obtain compliance with federal, state, and local laws designed to protect tenants from lead hazards in rental housing. Instead, they have continued to demand rent from Ms. Collins and attempted eviction.

27.     Defendants' actions, omissions, or failures to act caused Ms. Collins and her family, including young children, to be exposed to dangerous lead at the Property.

28.     Learning that her homes poses a health and safety hazard to herself and her children and grandchild causes Ms. Collins significant emotional distress and mental anguish.

## V. CAUSES OF ACTION

### COUNT I - VIOLATION OF THE RESIDENTIAL LEAD-BASED PAINT HAZARD REDUCTION ACT 42 USC §4851 ET SEQ & THE TOXIC SUBSTANCES CONTROL ACT 15 U.S.C. § 2689 (ALL DEFENDANTS)

29.     Ms. Collins re-alleges and reincorporates by reference all preceding paragraphs.

30.     The Residential Lead–Based Paint Hazard Reduction Act ("Lead Hazard Act") is also known as Title X of the Housing and Community Development Act of 1992.  Pursuant to Title X, it is a prohibited act under Section 409 of TSCA, 15 U.S.C. § 2689, for any person to fail or refuse to comply with a provision of Title X or any rule or order issued under Title X.

31.     The Lead Hazard Act is a disclosure statute requiring a seller or lessor of residential target housing (1) to provide the purchaser or lessee with a lead hazard information pamphlet (as described in 15 U.S.C. § 2686); (2) to disclose the known or possible presence of lead-based paint or other lead hazards; (3) to

provide information about lead hazards; and (4) to allow the purchaser or lessee a ten-day risk assessment period. 42 U.S.C. § 4852d. *Cudjoe ex rel. Cudjoe v. Dep't of Veterans Affs*., 426 F.3d 241, 245 (3d Cir. 2005).

32.    In order to demonstrate a violation of the statute, a plaintiff must show that (1) she was a lessee, (2) defendant was a lessor who failed to make the proper disclosures under 40 CFR § 745.107, (3) the leased property was target housing, and (4) the lease contract was signed after the regulatory effective dates. *Kaye v. Acme Invs., Inc.,* No. 08-12570, 2008 WL 5188712, at *3 (E.D. Mich. Dec. 8, 2008) citing *Sipes ex rel. Slaughter v. Russell*, 89 F.Supp.2d 1199, 1202–1203 (D.Kan.2000).

33.    Under the authority of the Lead Hazard Act, the Environmental Protection Agency promulgated regulations at 40 CFR Part 745, Subpart F and the Department of Housing and Urban Development promulgated regulations at 24 CFR Part 35 Subpart A.

34.    The Property is "target housing" within the meaning of the statute and regulations, which includes any housing constructed prior to 1978. 40 CFR 745.103; 24 CFR § 35.86.

35.    Ther term "lessor" means any entity that offers target housing for lease, rent or sublease, including corporations. 40 CFR § 745.103; 24 CFR § 35.86.

36.     The term "agent" means any party who enters into a contract with a lessor, including any party who enters into a contract with a representative of the lessor, for the purpose of leasing target housing. 40 CFR § 745.103; 24 CFR § 35.86.

37.     40 CFR § 745.118(e) states: "Failure or refusal to comply with § 745.107 (disclosure requirements for sellers and lessors), § 745.110 (opportunity to conduct an evaluation), § 745.113 (certification and acknowledgment of disclosure), or § 745.115 (agent responsibilities) is a violation of 42 U.S.C. 4852d(b)(5) and of TSCA section 409."

38.     The TSCA provides that "any person may commence a civil action against any person ... who is alleged to be in violation of this chapter ... to restrain such violation." 15 U.S.C. § 2619(a)(1).

39.     Defendants violated the Lead Hazard Act, TSCA, and implementing regulations in 40 CFR. § 745.115(a) by:

**<u>Failing to Disclose</u>**

a. Failing to disclose the presence of lead-based paint or lead-based paint hazards at the Property and any additional information concerning the known lead-based paint hazards, such as the location of the lead-based paint and hazards and the condition of the painted surfaces. 24 CFR § 35.88; 40 CFR § 745.107;

b. Failing to provide any records and reports pertaining to lead-based paint and lead based paint hazards. 24 CFR § 35.88; 40 CFR § 745.107;

c. Failing to provide the tenant EPA's Protect Your Family pamphlet. 24 CFR § 35.88; 40 CFR § 745.107.

**<u>Failing to Include Mandatory Certification and Acknowledgement of Disclosure</u>**

d. Failing to include in the lease or as an attachment to the lease a list of records or reports available to the lessor pertaining to the lead-based paint or lead hazards, or indicating that no such hazards exist. 40 CFR § 745.113(b)(3); 24 CFR § 35.92(b);

e. Failing to include in the lease or as an attachment to the lease a statement by the lessee affirming receipt of lead disclosures and reports and the lead hazard pamphlet. 40 CFR § 745.113(b)(4); 24 CFR § 35.92(b);

f. Failing to include in the lease or as an attachment to the lease a statement that the agent informed the lessor of all lead-based paint hazard requirements under 42 U.S.C. § 4852d; and the agent is aware of his/her duty to ensure compliance with the requirements of 40 CFR Part 745, Subpart F and 24 CFR Part Part 35 Subpart A. 40 CFR § 745.113(b)(5), 24 CFR § 35.92(b);

g. Failing to include in the lease or as an attachment to the lease the following elements: the signatures of the lessors, agents, and lessees, certifying to the accuracy of their statements, to the best of their knowledge, along with the dates of signature. 40 CFR § 745.113(b)(6), 24 CFR § 35.92(b).

40. Defendants knowingly violated the provisions of 42 USC 4852d and implementing regulations by failing to provide lead-based paint hazard disclosures and certifications as required in or as an attachment to the Lease.

41. The Lead Hazard Act authorizes private enforcement through civil actions. "Any person who knowingly violates the provisions of this section shall be

13

jointly and severally liable to the purchaser or lessee in an amount equal to 3 times the amount of damages incurred by such individual." 42 U.S.C. § 4852d(b)(3). *Roberts v. Hamer*, 655 F.3d 578, 582 (6th Cir. 2011); "In any civil action brought for damages pursuant to paragraph (3), the appropriate court may award court costs to the party commencing such action, together with reasonable attorney fees and any expert witness fees, if that party prevails." 42 U.S.C. § 4852d(b)(4).

42.     Ms. Collins is entitled to treble damages, court costs, reasonable attorney's fees, and expert witness fees. 42 U.S.C. 4852d(b); 24 CFR. § 35.96; 40 CFR § 745.118; 15 U.S.C. § 2619(c)(2).

43.     Ms. Collins requests that this Court permanently enjoin Defendants from further violations of the TSCA.

## COUNT II – VIOLATION OF MICHIGAN CONSUMER PROTECTION ACT MCL 445.901 ET. SEQ. (ALL DEFENDANTS)

44.     Ms. Collins re-alleges and reincorporates by reference all preceding paragraphs.

45.     The Michigan Consumer Protection Act, MCL 445.901-445.992, prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."

46.     The Landlord is a "person" providing goods or services within the scope of the Michigan Consumer Protection Act. MCL 445.901-445.922; 445.902(d).

14

47.     Defendants' actions, conduct, and/or omissions constitute "trade or commerce," as defined in MCL 445.902(g). Defendants engaged in the conduct of providing residential rental property for the Collins Family's household purposes. Defendants engaged in such conduct to make a profit.

48.     Defendants engaged in unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce as a landlord and property manager.

49.     Defendants represented the legal ability to collect rent the Property - held the Property out as an available rental unit, solicited tenants for the Property, and indeed, rented the property to the Collins Family.

50.     However, Defendants did not have the legal ability to rent the Property. Defendants did not have a Certificate of Compliance nor a lead clearance certificate and failed to provide safe and habitable housing as required by law.

51.     Defendants failed to reveal that it was illegal under City Code to collect rent for a property that did not have a certificate of compliance, and unlawfully demanded rent from Ms. Collins.

52.     Defendants fdemanded a security deposit greater than the amount allowed under Michigan law. MCL 554.602.

53.     Defendants omitted federally required lead hazard information and disclosures in or accompanying the lease.

54.     Defendants failed to provide the promised benefit by breaching the implied warranty of habitability when Defendants refused to make repairs or abate the dangerous lead condition at the Property.

55.     By these unfair, unconscionable, or deceptive acts or practices, Defendants have:

   a. Represented that the Property and a rental agreement leasing the Property have sponsorship, approval, characteristics, uses and benefits that they do not have in violation of MCL 445.903(c);

   b. Represented that the Property was of a particular standard, quality, or grade, when it was of another in violation of MCL 445.903(e);

   c. Caused a probability of confusion or of misunderstanding as to the legal rights, obligations, or remedies of Plaintiff in violation of MCL 445.903(n);

   d. Failed to reveal a material fact, the omission of which tended to mislead or deceive Plaintiff, and which fact could not reasonably be known by Plaintiff in violation of MCL 445.903(s);

   e. Failed to provide the promised benefits in violation of MCL 445.903(y);

   f. Failed to reveal facts that were materials to the transaction in light of representations of fact made in a positive manner in violation of MCL 445.903(cc).

16

56.     A violation of the Michigan Consumer Protection Act entitles a plaintiff to actual damages or statutory damages of $250.00 per occurrence, whichever is greater, and reasonable attorney fees pursuant to MCL 445.911.

57.     Ms. Collins has suffered injury as a result of these violations of the Act.

58.     Ms. Collins requests actual damages, or in the alternative, statutory damages for each violation.

59.     Further, Ms. Collins requests a declaratory judgment that Defendants' methods, acts, and practices resulting are unlawful under the MCPA.

60.     Ms. Collins requests reasonable attorney fees for the prosecution of this action.

## COUNT III - PREMISES LIABILITY
## (ALL DEFENDANTS)

61.     Ms. Collins re-alleges and reincorporates by reference all preceding paragraphs.

62.     "It is well settled in Michigan that a premises owner must maintain his or her property in a reasonably safe condition and has a duty to exercise due care to protect invitees from conditions that might result in injury." *Riddle v. McLouth Steel Prod. Corp.*, 440 Mich. 85, 96; 485 N.W.2d 676 (1992).

63.     Ms. Collins, as a tenant, is an invitee.

17

64.     A landlord breaches its duty of care to tenants as invitees when it "knows or should know of a dangerous condition on the premises of which the invitee is unaware and fails to fix the defect, guard against the defect, or warn the invitee of the defect." *Lowrey v. LMPS & LMPJ, Inc*., 500 Mich. 1, 8; 890 N.W.2d 344 (2016).

65.     Defendants owed a duty to inspect for lead and other hazards, remediate any lead hazards, provide warnings and disclosures regarding any lead hazards, and obtain a lead clearance and certificate of compliance prior to renting the Property to any tenant. See Detroit Code § 8-15-82; 42 U.S.C. § 4852d.

66.     Defendants breached these duties by:

a.     Failing to make reasonable and proper inspections for lead on the Property and obtain lead clearance and certificate of compliance;

b.     Failing to correct or warn of lead hazards, which Defendants knew or should have known by a proper and reasonable inspection;

c.     Failing to provide a safe and habitable place for tenants;

d.     Failing to observe all duties of care imposed upon Defendant by federal law, the statutes of the State of Michigan, ordinance of the City of Detroit and common law.

67.     Defendants' breach caused Ms. Collins to suffer actual and consequential damages.

**COUNT IV – NEGLIGENCE PER SE**

**(ALL DEFENDANTS)**

68.     Ms. Collins re-alleges and reincorporates by reference all preceding paragraphs.

69.     A presumption of negligence premised on the violation of a statute exists where 1) the statute is intended to protect against the alleged injury and 2) the plaintiff is within the class intended to be protected by the statute. *Klanseck v. Anderson Sales & Serv.*, 426 Mich. 78, 86–87, 393 N.W.2d 356, 360 (1986); *Zeni v. Anderson*, 397 Mich. 117, 128–29, 243 N.W.2d 270, 276 (1976).

70.     The Housing Law of Michigan is intended to prevent the harms that Ms. Collins and her family suffered. The statute's purpose is "to promote the health, safety and welfare of the people by regulating the maintenance, alteration, health, safety, and improvement of dwellings." MCL § 125 *preamble*.

71.     Defendants violated the Housing Law of Michigan by allowing unsafe and unhealthful conditions to exist on the premises unabated. MCL 125.536(1).

72.     MCL 554.139 provides that a lessor must keep the premises fit for the use intended, keep the premises in reasonable repair, and comply with the applicable health and safety laws of the state of the local unit of government where the premises are located. MCL 554.139(1)(a)-(b).

73.     Defendants violated MCL 554.139 by failing to keep the Property in reasonable repair or fit for the use intended (as a residential home for a family),

and failing to comply with Detroit health and safety laws by renting a home that contained severe lead contamination in violation of the Property maintenance code and health code as described more fully below.

74.     Detroit's property maintenance ordinance is designed to prevent the harms that Ms. Collins and her family suffered, including exposure to lead hazards. The ordinance's purpose is to ensure the public health, safety, and welfare. Detroit City Code Sec. 8-15-14. The purpose of the lead clearance requirements are laid out in Sec. 8-15-91:

> The purpose and intent of this subdivision is to protect the health and welfare of children who occupy rental property that contains lead-based paint hazards since exposure to lead can cause serious problems for children, including learning problems, behavioral problems, and speech and language problems and statistics show that the highest percentage of young children with elevated blood levels in the City reside in rental property." Sec. 8-15-91(a).

75.     Defendants violated the Detroit Property Maintenance Code by:

a.     Failing to register, obtain a lead clearance, and secure a certificate of compliance prior to renting the Property to the Collins family. Detroit City Code Sec. 8-15-81(a); Sec. 8-15-82(d); Sec. 8-15-82(g); Sec. 8-15-91(a).

b.     Failing to provide the lead disclosure pamphlet at the commencement of the lease. *Id*. at 8-15-99.

c.     Failing to have lead inspection/risk assessment performed by a certified lead inspector and control lead hazards prior to families occupying the rental property. Sec. 8-15-91.

76.     The Detroit Health Code Section 20-4-45 is also designed to protect tenants from exposure to lead hazards in rental housing.

77.     Defendants violated Sec. 20-4-45(a) and (b), which prohibits any owner from maintaining a dwelling with active lead hazards. "Dwelling" is defined under the Article as "any room, group of rooms or other interior area used by a natural person as a home ore residence, including any common passageways or areas, outbuildings, fencing or other structures used in conjunction with the dwelling unit." Sec. 20-4-1.

78.     "The violation of federal statutes and regulations is commonly given negligence per se effect in state tort proceedings." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 318, 125 S.Ct. 2363, 2370, 162 L.Ed.2d 257 (2005).

79.     The Lead Hazard Act was enacted to "eliminate lead-based paint hazards in all housing as expeditiously as possible" while also educating the public about the "hazards and sources of lead-based paint poisoning and steps to reduce and eliminate such hazards." 42 U.S.C. §§ 4851a(1) & (7).

80.     The Lead Hazard Act requires lessors to disclose to lessees lead-based paint hazards in the hopes of mitigating the harm posed to children. See 42 U.S.C. § 4852d(a); *Cudjoe ex rel. Cudjoe v. Dept. of Vet. Affairs*, 426 F.3d 241, 248 (3d Cir.2005).

21

81.     Defendants violated the Lead Hazard Act by failing to provide required lead information pamphlet and disclosures at the time of lease signing. See *supra* Count 1.

82.     Defendants' violation of Michigan statutes, Detroit City Code, and federal lead disclosure laws caused harm to Ms. Collins.

## COUNT V – VIOLATION OF HOUSING LAW OF MICHIGAN
## (ALL DEFENDANTS)

83.     Ms. Collins re-alleges and reincorporates by reference all preceding paragraphs.

84.     Defendants have violated the Housing Law of Michigan by failing to provide maintenance and repairs to the Property.

85.     The Property is a "dwelling" under MCL 125.402(1).

86.     The active lead hazards and other hazards at the Property are an illegal nuisance under MCL 125.402(18).

87.     The Housing Law of Michigan defines "nuisance" as "whatever is dangerous to human life or detrimental to health ... and whatever render the air or human food or drink unwholesome ... and all such nuisances are hereby declared illegal." MCL 125.402(18).

88.     Defendants were required to secure a certificate of compliance before renting the unit to tenants. MCL 125.529-125.531.

89.    Defendant has permitted unsafe, unsanitary, and unhealthful conditions to exist in the dwelling in violation of the Michigan Housing Act. See MCL 125.536.

90.    A violation of the Housing Law of Michigan provides an occupant "an action against the owner for such damages he has actually suffered as a consequence of the [unsafe, unsanitary or unhealthful] condition." MCL 125.536(1).

91.    In addition, "[w]hen the condition is a continuing interference with the use and occupation of the premises, the occupant shall also have injunctive relief appropriate to the abatement of the condition." *Id*.

92.    The remedies provided by MCL 125.536 "shall be concurrent," and "[w]hen several remedies are available hereunder, the court may order any relief not inconsistent with the objectives of this act, and calculated to achieve compliance with it." MCL 125.536(2).

93.    As a result of Defendants' failure to comply with the basic requirements of the Housing Law of Michigan, Ms. Collins has suffered injury.

## COUNT VI – WILLFUL AND WANTON MISCONDUCT

94.    Ms. Collins realleges and incorporate by reference all preceding paragraphs.

23

95.     The elements of willful and wanton misconduct are: "(1) knowledge of a situation requiring the exercise of ordinary care and diligence to avert injury to another, (2) ability to avoid the resulting harm by ordinary care and diligence in the use of the means at hand, and (3) the omission to use such care and diligence to avert the threatened danger, when to the ordinary mind it must be apparent that the result is likely to prove disastrous to another." *Taylor v Laban*, 241 Mich App 449, 457; 616 NW2d 229 (2000).

96.     Moreover, willful and wanton conduct is "a different kind of offense than ordinary negligence, even though it be gross.  Fault is involved in both, but in the one the fault of the callous, the brutish, the quasi-criminal." *Sun Oil Co v Seamon*, 349 Mich 387, 411; 84 NW2d 840 (1957).

97.     Defendants' acted callously in disregard of the Collins family's health and well-being when they knowingly rented them a home contaminated with dangerous lead for profit without removing the hazards or providing  disclosures

98.     Defendants' willful and wanton misconduct caused Ms. Collins to suffer damages.

99.     Therefore, this Court should enter judgment in favor of Ms. Collins and award damages in her favor.

## COUNT VII – NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS (ALL DEFENDANTS)

100.   Ms. Collins reallege and incorporate by reference all preceding paragraphs.

101.   Defendants owed duties to Ms. Collins, Defendants breached those duties, and by doing so, Defendants caused actual and consequential damages to Ms. Collins.

102.   Defendants have, through their negligence, injured Ms. Collins's granddaughter.

103.   Ms. Collins witnessed this injury to her granddaughter.  Ms. Collins first became aware of the injury after the appointment when her granddaughter's blood was tested for lead and has continued to be a witness to her granddaughter's ongoing injuries.

104.   Both the minor child's injuries and Ms. Collins's emotional distress were highly foreseeable results of Defendants' negligent conduct.  The City of Detroit requires lead inspection and remediation precisely to protect families against this type of harm.  Ms. Collins's two-year-old granddaughter is a member of the age group (0-6 years old) most vulnerable to lead poisoning.

105.   Defendants' extreme and outrageous actions and omissions to Ms. Collins

negligently caused Ms. Collins to suffer severe emotional distress and mental anguish.

## COUNT VIII – NUISANCE

106.   Ms. Collins realleges and incorporates by reference all preceding paragraphs.

107.   "The existence of the nuisance may be established merely by showing a violation of the ordinance," and private citizens may bring an action to abate a public nuisance where they can show damages of a special character distinct from the injury suffered by the public generally. *Towne v Harr,* Mich. App. 230, 232; 460 N.W. 2d 596 (1990).

108.   The City has a long-standing ordinance declaring that properties not in compliance with the property maintenance code are a public nuisance. Detroit City Code § 8-15-46.

109.   The City of Detroit has unequivocally declared that where a landlord fails to comply with health and safety laws designed to prevent childhood lead exposure, and rents the unsafe property to tenants for profit, this is a public nuisance that contributes to Detroit's crisis of lead-poisoned children who go on to experience lifelong complications. "Each case is a tragedy for the child, his or her family, and the City State and Federal authorities that must provide services for these individuals."

26

110.   The Chief Judge in the Third Judicial Circuit Court recently affirmed that properties not fully in compliance with the Property Maintenance Code are a public nuisance per se. **(Exhibit 6, *Detroit v. Hagerman* Opinion and Order, December 20, 2022. Pg 9).**

111.   Defendants violated Detroit Property Maintenance Code § 8-15-81 through § 8-15-83 and § 8-15-91 by renting the Property to Ms. Collins without registering, obtaining a lead clearance, and securing a certificate of compliance.

112.   Further, Ms. Collins suffered a special harm distinct from the general public, in that her and her family were directly exposed to toxic lead and her young grandchild was lead-poisoned.

113.   Under Michigan law, a private nuisance is an "unreasonable interference with the use or enjoyment of property" that results in "significant harm." *Adams v. Cleveland-Cliffs Iron Co.*, 237 Mich.App. 51, 602 N.W.2d 215, 222 (1999).C

114.   Defendants have been repeatedly informed by Ms. Collins and the City of Detroit of the unsafe and unhealthful condition at the Property and need for repairs, especially to remove lead hazards.

115.   Defendants' continued flouting of the law and gross violations of building, health and safety codes have rendered the Property unsafe and unfit for human habitation.

27

116. As a consequence of Defendants' acts and omissions, the Property has no reasonable rental value.

117. As a proximate result of the nuisance, Ms. Collins has sustained injuries including interference with the quiet use and comfortable enjoyment of the home.

118. Defendants' actions in maintaining the nuisance after repeated notification of the lack of maintenance and lead hazards entitle Ms. Collins to damages including injunctive relief to abate the nuisance.

## VI. REQUESTED RELIEF

WHEREFORE, Ms. Collins, respectfully requests that this Court enter judgment in her favor and award the following relief:

(a)  Enjoin Defendant from any actions to obtain possession or otherwise evict Ms. Collins and her family from the Property;

(b)  Enjoin Defendant from engaging in fraudulent, unconscionable, misleading or deceptive conduct and/or conduct which violate the Michigan Consumer Protection Act in the course of entering into residential leases;

(c)  Enjoin Defendants from continuing violations of the Toxic Control Substances Act;

(d)    Money damages in an amount as shown at the trial by jury in this matter to compensate Ms. Collins for actual damages including mental anguish, statutory damages of a minimum of $250 for each violation of the Michigan Consumer Protection Act, and ;

(e)    Treble damages, attorney's fees, and expert witness fees and costs as permitted by the federal causes of action and Michigan Consumer Protection Act;

(f)    Any other and further relief as shall be agreeable to equity and good conscience.

Respectfully submitted,

/s/ Nicole Vargas

Nicole Vargas
LAKESHORE LEGAL AID
2727 Second Avenue Suite 118
Detroit, MI 48201
(313) 242-0811 ext. 1316
nvargas@lakeshorelegalaid.org
P85580
*Attorney for the Plaintiff, Arva Collins*

Dated:    10/17/2023